# ANTITRUST

## LEGALITY OF "ZONE PRICING" BY OIL COMPANIES UNDER THE GASOLINE DIVORCEMENT LAW AND THE ROBINSON-PATMAN ACT

January 28, 1994

*The Honorable Gary R. Alexander*
*House of Delegates*

You have requested our opinion whether the practice by major oil companies of "zone pricing" in distributing gasoline to their dealers for resale to the public violates the "voluntary allowance" uniformity provision of §10-312 of the Business Regulation ("BR") Article, Maryland Code; and whether zone pricing violates federal or State antitrust laws, specifically the Robinson-Patman Act or its Maryland analogue.

Based on our understanding of the relevant facts, we have concluded as follows:

1. The "voluntary allowance" uniformity requirement in BR §10-312(1) applies only to temporary price reductions that are offered to a retail dealer to enable the dealer to meet the lower price of a competing dealer. The provision does not require that the wholesale price of gasoline to all dealers of one supplier be uniform throughout Maryland and does not prohibit zone pricing.

2. Zone pricing in itself does not violate the Robinson-Patman Act. If the price discriminations imposed by zone pricing cause an injury to competition, however, there may be a violation of the Robinson-Patman Act in the geographic area where the injury occurs.

3

**I**

**Background**

The Maryland Gasoline Divorcement Law, BR §§10-311 and 10-312, mandates that all retail gasoline service stations be operated by independent dealers and prohibits operation of a retail gasoline service station by a producer or refiner of motor oil. The major oil companies supply gasoline to their dealers in Maryland and, ordinarily, lease the station and equipment to them. The dealer agreement requires the dealer to purchase gasoline from the dealer's supplier for sale under the brand name of the supplier.

The wholesale price that the dealer pays to the supplier for gasoline is called the dealer tank wagon price. The dealer tank wagon price varies from day to day due to a variety of factors including demand, availability, and suppliers' costs. Each retail dealer sets the resale price of gasoline to the public.

Under a zone pricing system, as we understand it, an oil company divides the state into geographic price zones. The oil company creates the zones using undisclosed criteria. In fact, even the number of zones remain undisclosed. Each retail station of the particular brand in a given price zone pays an identical tank wagon price. Each price zone, however, may receive a different tank wagon price from its supplier. Dealers base the retail price of gasoline on the tank wagon price that they pay to the suppliers. Since each zone in the state may receive a different tank wagon price, the retail price of gasoline for one brand will also vary in the state. *See Cain v. Chevron U.S.A., Inc.,* 757 F.Supp. 1120 (D. Or. 1991).

The Gasoline Divorcement Law was drafted, in part, to prevent discrimination among dealers of the same brand of gasoline. The General Assembly believed that all dealers of the same brand of gasoline should be treated equally by their supplier of gasoline. *Governor v. Exxon Corp.*, 279 Md. 410, 370 A.2d 1102 (1977), *aff'd sub nom. Exxon Corp. v. Governor,* 437 U.S. 117 (1978). The intent of the federal Robinson-Patman Act, 15 U.S.C. §13, and its Maryland analogue, §11-204(a)(3) of the Commercial Law ("CL") Article, Maryland Code, is to maximize equality of opportunities among small, independent businesses by preventing price discrimination by suppliers of goods of like grade and quality. *FTC*

*v. Sun Oil Co.,* 371 U.S. 505, 520 (1963). This opinion will examine whether the price discrimination created by zone pricing of gasoline is prohibited by either the Gasoline Divorcement Law or the Robinson-Patman Act.

## II

### Voluntary Allowances

Under the Gasoline Divorcement Law, a major oil company that supplies gasoline for resale by retail dealers in Maryland may not operate any retail station. The statute also requires a supplier to "extend all voluntary allowances uniformly to all retail dealers" that it supplies. BR §10-312(1).[1] This statute became law in 1974 and survived challenges to its constitutionality in the Maryland Court of Appeals and the United States Supreme Court. *Governor v. Exxon Corp.*, 279 Md. 410, 370 A.2d 1102 (1977), *aff'd sub nom. Exxon Corp. v. Governor*, 437 U.S. 117 (1978).

The intent of the General Assembly in passing the Gasoline Divorcement Law was that all dealers selling the same brand of gasoline would be treated equally by their suppliers. *Governor v. Exxon*, 279 Md. at 447. This intent is reflected in the "voluntary allowance" provision of the law.

In *Governor v. Exxon,* the oil companies contended that the uniform voluntary allowance provision conflicted with the federal Robinson-Patman Act, 15 U.S.C. §13, and was therefore invalid under the Supremacy Clause of the United States Constitution. Specifically, the oil companies argued that the voluntary allowance provision deprived them of a defense available under the Robinson-Patman Act: that a temporary price reduction to a dealer was made

---

[1] The paragraph reads in full as follows:

> Each producer, refiner, or wholesaler of motor fuel who supplies motor fuel to retail service station dealers:
> (1) shall extend all voluntary allowances uniformly to all retail service station dealers supplied ....

in good faith to meet the equally low price of a competitor. 279 Md. at 445. *See* Part IIIC below. The Court of Appeals, after defining the term "voluntary allowance," rejected the oil companies' argument and stated that the Gasoline Divorcement Law was not invalid under the Supremacy Clause, a holding that was affirmed by the Supreme Court. *Exxon v. Governor*, 437 U.S. at 133-34.

To determine the meaning of "voluntary allowance," the Court of Appeals examined the Comptroller's study of gasoline retailing in Maryland, affidavits filed by the oil companies, congressional reports dealing with the retail marketing of gasoline, and the legislative history of the statute. Ultimately, the Court defined the term as "temporary price reductions in the wholesale price to a retail dealer to enable the dealer to meet the lower price of a competing retail dealer." *Governor v. Exxon*, 279 Md. at 447. The Court determined that the purpose of "voluntary allowances" granted by oil companies was to help its dealers reduce their retail prices in order to compete directly with dealers of another brand. If, for example, a brand X retail station lowers its pump price of gasoline and brand Y grants a discount tank wagon price exclusively to its local brand Y dealer across the street from the brand X dealer to help that one dealer compete, the discount granted to the brand Y dealer is a "voluntary allowance." Under BR §10-312(1), if such a discount is granted to one retail dealer in Maryland, it must be granted to all dealers of that brand.

The voluntary allowance provision of the Gasoline Divorcement Law prohibits the granting of temporary price reductions solely to one retail station or group of stations, but it is not otherwise applicable to a major oil company's zone pricing system. The Court of Appeals has clearly defined the voluntary allowance provision to require that any temporary price reduction offered to a dealer to enable the dealer to meet the lower price of a competing dealer must be offered uniformly to all dealers in the state. 279 Md. at 452. The provision does not require major oil companies to have one uniform tank wagon price for every retail station in the state.

In *Governor v. Exxon Corp.*, the Court of Appeals carefully defined the terms used in the statute in order to defeat the oil companies' claim that the statute was unconstitutionally vague. 279 Md. at 453-455. The Court said that the term "voluntary allowance" does not refer to any other type of assistance that might be extended

to dealers such as rent relief, but specifically is limited to "certain price discounts."  279 Md. at 446 n.9.  Thus, the meaning of the voluntary allowance provision cannot be expanded to prohibit zone pricing unless the sole reason for the zones is to grant temporary discounts in the tank wagon price to dealers in some zones and not to all dealers.[2]

We conclude that the Gasoline Divorcement Law does not address the use of zone pricing by oil companies to set the dealer tank wagon prices of gasoline.

## III

## The Robinson-Patman Act

### A.    *Introduction*

The Robinson-Patman Act, a 1936 amendment to the Clayton Act, is the principal federal statute directed at price discrimination. Section 2(a) of the Robinson-Patman Act, 15 U.S.C. §13(a), is intended to prohibit price discrimination by a seller to similarly situated buyers when the effect of that discrimination injures or lessens competition.  The Act provides in pertinent part as follows:

> That it shall be unlawful for any person engaged in commerce, in the course of such commerce ... to discriminate in price between purchasers of commodities of like grade and quality...  where the effect of such

---

[2] Though we have little information on how zone pricing systems work in Maryland, they were examined in *Cain v. Chevron U.S.A., Inc.*, 757 F. Supp. 1120 (D. Or. 1991).  There, the court found that Chevron divided the City of Portland into 21 zones with the objective of grouping all Chevron service stations that compete with one another for customers into one geographic zone.  The court found that the zones were established by reference to traffic flow patterns, locations of competing stations, price movement patterns, and natural barriers to traffic flow.  The grouping of retail service stations of one brand in a geographical zone for the purpose of establishing a wholesale price at which the oil company sells gasoline to those dealers does not come under the purview of the voluntary allowance provision.

> discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or injure, destroy, or prevent competition with any person, who either grants or knowingly receives the benefit of such discrimination or with customers of either of them.

Commentators have called the Robinson-Patman Act the most controversial and complex of all antitrust statutes. *See generally* ABA Section of Antitrust Law, Monograph 4, *The Robinson-Patman Act: Policy and Law*, Vol. I (1980). It has been subject to extensive interpretation by various federal circuit courts of appeals as well as the United States Supreme Court. The Supreme Court once observed that "precision of expression is not an outstanding characteristic of the Robinson-Patman Act." *Automatic Canteen v. FTC*, 346 U.S. 61 (1953).

The Federal Trade Commission and the Department of Justice have authority to bring cases under § 2(a) of the Act, and private parties may file suits for injunctions and damages. In actual practice, the Justice Department does not bring any cases under Robinson-Patman, and the Federal Trade Commission has not brought cases in recent years. Most of the cases interpreting the Act have been brought by private parties.

Under the Maryland Antitrust Act, Title 11, Subtitle 2 of the Commercial Law ("CL") Article, Maryland Code, the Attorney General's Office may bring a price discrimination action on behalf of the State to recover damages under the Robinson-Patman Act. The Attorney General may also bring a price discrimination action in State court under Maryland's version of § 2(a) of the Robinson-Patman Act, CL §11-204(a)(3). In interpreting and enforcing Maryland's version of the Robinson-Patman Act, State courts are to be "guided by the interpretation given by the federal courts ...." CL §11-202(a)(2). *See Hinkleman v. Shell Oil Co.,* 962 F.2d 372, 379 (4th Cir.), *cert. denied*, 113 S.Ct. 831 (1992).

In order to establish a *prima facie* case of price discrimination under the Robinson-Patman Act, a plaintiff must demonstrate (i) two or more consummated sales in interstate commerce, (ii) that involve commodities of like grade and quality, (iii) in which a different price is charged by the same seller to two or more purchasers for use or

resale in the United States, and (iv) that the price discrimination substantially injured competition. *Texaco Inc. v. Hasbrouck,* 496 U.S. 543, 110 S.Ct. 2535, 2542-43 (1990). An absolute defense to a charge of price discrimination is provided in §2(b) of the Act, which specifically provides an exception for price discriminations given by suppliers to their competing retailer customers when the discrimination is for the purpose of meeting in good faith the equally low price of a competing supplier.

This analysis will examine whether zone pricing, based on our understanding of how the system works in Maryland, violates §2(a) of the Robinson-Patman Act, and whether the major oil companies that sell their gasoline to their dealers under a zone pricing system would have available to them the "meeting competition" defense of §2(b) if a *prima facie* case of price discrimination is proven.

### B.    Section 2(a) Offense

For Robinson-Patman purposes, a transaction is within interstate commerce if "at least one of the two transactions which when compared generate a discrimination, crosses a state line." *Gulf Oil Corp. v. Copp Paving Co. Inc*., 419 U.S. 186 (1979). Since no gasoline is refined in Maryland, *see Exxon Corp. v. Governor,* 437 U.S. at 123, the purchase of gasoline by an independent dealer in Maryland from the dealer's supplier is a transaction in interstate commerce.

Because each grade of gasoline sold by a particular oil company to its dealers is identical, gasoline meets the "like grade and quality" requirement of the Act. *See Texaco v. Hasbrouck*, 110 S.Ct. at 2543 n.14. The Supreme Court also held in *Hasbrouck* that a price discrimination within the meaning of the Robinson-Patman Act is merely a price difference. 110 S.Ct. at 2544. Thus, if two retail dealers of the same brand are receiving different tank wagon prices from their supplier, the price difference requirement of the Act is met, and an analysis of whether a competitive injury has occurred is necessary.

The primary issue in any case challenging zone pricing on Robinson-Patman grounds is whether zone pricing injures competition. Before there can be a finding of an *injury to competition* because of a price discrimination, there must first be a

finding that the favored customer, who receives the benefit of a price discount, is in actual competition with disfavored customers. For instance, buyers who perform different functions in the selling chain, such as wholesalers and retailers, do not compete for the same customers and are not in competition. A price discrimination between them would not cause a competitive injury actionable under the Robinson-Patman Act. *Texaco v. Hasbrouck*, 110 S.Ct. at 2543. Likewise, there is no actionable discrimination within the meaning of §2(a) for price differences granted by a supplier to customers who are in different geographical markets and thus do not compete with each other. *Best Brands Beverage v. Fallstaff Brewing Co.*, 842 F.2d 578 (2d Cir. 1987).

Whether retail stations compete with each other is strictly a factual issue. In *Bargain Car Wash Inc. v. Standard Oil Co.* (*Indiana*), 466 F.2d 1163 (7th Cir. 1972), the court examined the use by one defendant, American Oil, of zone pricing for retail gasoline stations in Chicago. The evidence in that case showed that there were 22 zones within a mile and a half radius of the plaintiff's American station, containing approximately 40 American retail stations. The court found that the American zones did not represent separate competitive markets for the sale of gasoline. The Court stated that it was "readily apparent" that the plaintiff, Bargain Car Wash, competed with American retail stations in the zones surrounding Bargain. 466 F.2d at 1168.

*Bargain Car Wash* and other cases indicate that when zones created by a supplier are geographically close or arbitrarily chosen, and there is a reasonable possibility that a dealer's customers would be likely to cross over from one area to another, then the favored dealers may be found to be in competition with the disfavored dealers. For example, in *D.L. Ingram v. Phillips Petroleum Co.*, 259 F. Supp. 176 (D.N.M. 1966), the court found that two gasoline wholesalers were in practical competition with each other. Despite being in two separate states, each did business in an area comprising a "single homogeneous economic unit" and customers from both states patronized each of the businesses. 259 F. Supp. at 182. *See Falls City Industries, Inc. v. Vanco Beverage, Inc.*, 460 U.S. 428 (1983); *Best Brands Beverage, Inc. v. Fallstaff Brewing Corp.* 842 F.2d 578 (2d Cir. 1987).

Determining whether retail stations within one zone created by an oil company compete with dealers of the same brand in other zones in Maryland requires a factual analysis of the zones. This analysis would include a study of the guidelines that were used in determining the boundaries of the zone, the primary sources of the customers for each dealer in the zone, and other similar economic factors. If the zones are drawn narrowly, as in *Bargain Car Wash*, there is usually a competitive nexus between the retail dealers in some favored and disfavored price zones. However, if the zones are drawn broadly — for example, with one zone for the Washington area and another zone for the Baltimore area — it is more difficult to prove actual competition between dealers in the two zones. Evidence of actual competition between dealers is essential for a *prima facie* case under the Robinson-Patman Act. *Best Brands Beverage v. Fallstaff Brewing Corp.*, 842 F.2d at 584.

Once the competitive relationship has been established between retail dealers of the same brand in separate zones, the final step in making a *prima facie* case under §2(a) is to prove that the price discrimination substantially injured competition. The injury necessary to prove a violation of the Act may occur on any one of three levels in the selling chain. These levels include injury at the level of the seller's competitors, known as a primary line injury; injury at the level of the buyers, known as a secondary line injury; and injury at the level of the buyer's customers, known as a tertiary line injury. Injury to competition caused by zone pricing, wherein dealers receiving a favorable tank wagon price compete with dealers of the same brand paying a higher tank wagon price, is secondary line injury, because it occurs at the buyer's level of competition.

The leading case on secondary line injuries to competition is *FTC v. Morton Salt Co.*, 334 U.S. 37 (1948). There the Supreme Court held that proof of a substantial and sustained price discrimination in the sale of products for resale in an amount sufficient to influence resale prices is sufficient to raise an inference of injury to competition. *See* ABA Antitrust Section, Monograph 4, *The Robinson-Patman Act: Policy & Law*, Vol. I, at 97 (1980).[3] The

---

[3] The *Morton Salt* "inference of injury" test has been affirmed by the Supreme Court in more recent Robinson-Patman cases. In *Falls City Industries v. Vanco,* the Court said that if the disfavored

(continued...)

Court also found that it is not necessary to prove that the price discrimination actually harmed competition but only that there is a reasonable possibility that the discrimination had such an effect on competition.  334 U.S. at 47.

Injury to competition may also be proven by evidence that the price discrimination caused an injury to a specific competitor who did not receive the benefit of the price discrimination.  In *Falls City Industries*, the Supreme Court said that if a plaintiff competitor shows direct evidence of lost sales caused by the discrimination, then a "reasonable possibility that a price difference may harm competition" exists.  460 U.S. at 434-35.  *Accord, Feeser v. Serv-A-Portion, Inc.*, 909 F.2d 1524 (3d. Cir. 1990).

Thus, in order to prove that zone pricing violates the Robinson-Patman Act, it is necessary to prove a sustained and substantial price discrimination sufficient to influence the favored customers' resale price or to prove that a dealer in a disfavored zone suffered a sales or profit decline caused by the more favorable tank wagon price a competitor in a different zone received.

In *Bargain Car Wash*, the federal court determined that the price zones created by Standard Oil resulted in a competitive injury both under the *Morton Salt* rule and because Bargain suffered a direct injury as a result of the price discrimination.  In that case, the court examined the amount and duration of the discounts granted to each of Bargain's approximately 40 competitors in 12 different price zones surrounding Bargain.  It also examined the extent to which this discrimination caused a diversion of business from Bargain and the degree of Bargain's competitors' profit margins as compared to Bargain's profit margin.  The court found that retail service stations in other zones apart from Bargain received an average eleven percent discount in the tank wagon price of gasoline over a one year period in relation to Bargain, and that this was sufficient to meet the

---

[3] (...continued)
customer shows proof of substantial price discrimination over time, then a reasonable possibility exists that a price difference may harm competition. 460 U.S. at 437. In *Texaco v. Hasbrouck*, the Supreme Court held that for the plaintiff to prove competitive injury under Robinson-Patman, the plaintiff need only show that a substantial price discrimination existed between himself and his competitors over a period of time.   110 S.Ct. at 2551.

*Morton Salt* test of a sustained and substantial price discrimination. 466 F.2d at 1174. The court also found that the lower prices granted Bargain's competitors in surrounding zones substantially contributed to Bargain's loss of sales and ultimate business failure. 466 F.2d at 1175. Subsequent cases have found competitive injury in gasoline markets where the price differentials were as low as 1.8¢ to 6¢ a gallon. *Texaco v. Hasbrouck*, 110 S.Ct. at 2530; *Ingram v. Phillips*, 259 F. Supp 176 (D.N.M. 1966).

Conversely, if price discrimination is neither sustained nor substantial in amount, or if the lost sales by a competing dealer are minimal, there is no injury to competition due to the price discrimination. In *American Oil Company v. FTC*, 325 F.2d 101 (7th Cir. 1963), the court reversed a finding by the FTC that American had violated the Robinson-Patman Act by selling gasoline at a lower dealer tank wagon price to dealers in Smyrna, Georgia than to dealers approximately 15 miles away in Marietta, Georgia, over a seventeen day period, notwithstanding evidence that American dealers in the two towns shared many of the same customers. The court held that price discrimination *per se* does not constitute a violation of §2(a) of the Robinson-Patman Act and went on to examine the actual effect of the discrimination. The Court found that a substantial but *temporary* price discrimination in favor of Smyrna dealers had only a slight effect on competition and that a *de minimis* injury is not sufficient for a *prima facie* violation of the Robinson-Patman Act. 325 F.2d at 106.

Thus, to determine if a zone pricing system violates the Robinson-Patman Act, one must examine (i) the history and background of the system; (ii) the competitive pattern of the zones; (iii) the price differentials between zones over at least a one year period; (iv) the effect the price differential has had on pump prices; (v) the economic effects that the granting of price differentials to dealers in different zones has had on competition between dealers of the same brand located in different price zones; and (vi) whether lost sales can be directly attributed to the tank wagon price granted to dealers in a favored zone. The cases suggest a high likelihood that a competitive injury exists for any sustained differentials above the *de minimis* level in a highly competitive industry with low profit margins like the retail gasoline industry.

To summarize, zone pricing in itself does not violate the Robinson-Patman Act. If the price discrimination imposed by zone pricing causes an injury to competition, however, there may be a violation of the Act in the area where the injury occurs. If the price

discriminations by any oil company are sustained, substantial, and pervasive, the Attorney General could seek an injunction on behalf of the State to prohibit or change the zone pricing system. Alternatively, a private plaintiff who can prove that there is a causal connection between the plaintiff's injury and the price discrimination can, under the Act, seek damages and an injunction in federal court. 15 U.S.C. §§15 and 26.

### C.    Section 2(b) Defense

A supplier of gasoline who commits a *prima facie* violation of §2(a) of the Robinson-Patman Act may be able to escape liability by establishing that the price discrimination was for the purpose of meeting the equally low tank wagon price of a competitor.  The so-called "meeting competition" defense is contained in §2(b) of the Robinson-Patman Act, 15 U.S.C. §13(b), and it provides in pertinent part:

> That nothing herein contained shall prevent a seller rebutting the *prima facie* case thus made by showing that his lower price or the furnishing of services or facilities to any purchaser or purchasers was made in good faith to meet an equally low price of a competitor, or the services or facilities furnished by a competitor.

The Supreme Court has held that this defense "'requires the seller, who has knowingly discriminated in price, to show the existence of facts which would lead a reasonable and prudent person to believe that the granting of a lower price would in fact meet the equally low price of the competitor.'"  *Falls City Industries, Inc. v. Vanco Beverage, Inc.*, 460 U.S. at 438 (quoting *United States v. United States Gypsum Co.*, 438 U.S. 422 (1978)).  The meeting competition defense of §2(b) is absolute, regardless of any adverse effect on competition caused by the price discrimination. *Standard Oil Co. v. FTC*, 340 U.S. 231, (1951).

American Oil Company, one of the defendants in *Bargain Car Wash*, argued that even if the court found that it had engaged in price discrimination, it had done so to meet the competition it faced in metropolitan Chicago.  According to the court, the "meeting competition" defense would be available to American if the lower

price granted to the favored competitors of Bargain was granted to meet an equally low price made by a competitor of American to its dealers who are in competition with American's dealers. 466 F.2d at 1175. The court found that American had violated §2(a) of the Robinson-Patman Act but sent the case back to the district court to examine whether American could prove this "meeting competition" defense.

In *Governor v. Exxon*, the Maryland Court of Appeals held that the §2(b) defense was restricted to a situation in which a supplier offered a tank wagon discount to a dealer in order to meet an equally low price offered to that same dealer by another oil company. That situation does not occur in the gasoline industry, because all dealers of one brand purchase their gasoline from the supplier of that brand; therefore, the Court held that the §2(b) defense was unavailable to the major oil companies in Maryland. 279 Md. at 451-52. In its affirmance, the Supreme Court signaled that it was aware of the contrary holding on the availability of the §2(b) defense by the Seventh Circuit in *Bargain Car Wash* but left the issue unresolved. 437 U.S. at 129 n.20 an accompanying text.[4]

## IV

### Conclusion

In summary, it is our opinion that zone pricing itself does not violate BR §10-312(1) or federal and State price discrimination laws. If the purpose of the zones is to grant voluntary allowances only to selected dealers or if the effect of price zones is to cause a competitive injury, their use may violate the Gasoline Divorcement Law or the Robinson-Patman Act in particular areas in the State. In order to prove a competitive injury, a private plaintiff or government enforcement agency must show that the zones are so narrowly drawn that dealers in different zones compete with each other, that the

---

[4] Under *FTC v. Sun Oil*, 371 U.S. 505 (1963), the "meeting competition" defense is not available to a supplier that lowers its wholesale price to aid its dealers in competition with a dealer that lowered its retail price without support from its supplier. In such a situation, the supplier is not in competition with its dealer's competitor and cannot invoke the §2(b) defense.

dealers in different zones receive substantial and sustained differences in the tank wagon price granted from their supplier, and that the injury suffered is not *de minimis*. A zone pricing system will also violate §2(a) of the Robinson-Patman Act if evidence is offered proving that a particular dealer lost sales because of the favorable price granted to its competitor. If evidence is offered sufficient to prove a *prima facie* case of a violation of §2(a) of the Robinson-Patman Act, the "meeting competition" defense would not be available to the discriminator under Maryland law.

J. Joseph Curran, Jr.
*Attorney General*

John R. Tennis
*Assistant Attorney General*

Jack Schwartz
*Chief Counsel*
  *Opinions and Advice*